## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
|    DOUGLAS M. WEIDNER, | : | |
| | : | |
|              Debtor. | : | Bky. No. 10-31034 ELF |
| | : | |
| | : | |
| DEBORAH D. KLEIN, | : | |
| | : | |
|        Plaintiff, | : | |
| | : | |
|    v. | : | |
| | : | Adv. No. 11-0294 ELF |
| DOUGLAS M. WEIDNER, | : | |
| | : | |
|       Defendant. | : | |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

Plaintiff Deborah Klein ("Klein") is the former spouse and judgment creditor of Defendant-Debtor Douglas Weidner ("the Debtor or Weidner").  Klein and the Debtor were divorced in California in 1999.  Pursuant to the divorce decree, Klein was awarded spousal and child support.  On June 2, 2008, after protracted litigation between the parties, the California state court entered judgment in Klein's favor in the amount of $548,797.07 for unpaid spousal and child support ("the California Judgment").

In August 2008, Klein commenced a lawsuit ("the District Court Action") against the Debtor in the United States District Court for the Eastern District of Pennsylvania ("the District Court").  In the District Court Action, Klein alleged that the Debtor fraudulently transferred

certain assets to himself and his current wife as tenants by the entireties in an effort to evade

payment of the California Judgment.  In three (3) orders and opinions issued in 2010, the District

Court found in Klein's favor, ordered that title to the transferred property be restored to the

Debtor solely and awarded Klein punitive damages in an amount equal to the California

Judgment.

In this adversary proceeding, Klein seeks a determination that the prior state and federal

court judgments are nondischargeable under 11 U.S.C. §523(a) and that the Debtor is not entitled

to a general bankruptcy discharge pursuant to 11 U.S.C. §727(a).  In her amended complaint,

Klein asserted twelve (12) claims, including four (4) claims under §523(a) and seven (7) claims

under §727(a).

Relying on the findings of fact and conclusions of law entered in the District Court

Action and the doctrine of collateral estoppel,[1] Klein has moved for summary judgment on four

(4) of her claims under §§727(a)(2) and (a)(4).

The summary judgment motion focuses largely on three (3) pre-petition transfers made by

the Debtor.  Two (2) of the three (3) transfers were transfers of the Debtor's interest in his

residential real property; the other was a transfer of his ownership interest in a closely-held

business.  The residential real property transfers involved: (1) the transfer of ownership from the

Debtor to himself and his current wife and (2) the grant of a mortgage to Robert Benedix ("the

Benedix Mortgage").

As explained more fully below, I conclude that there are no material issues of fact in

---

[1]      "Collateral estoppel" also is referred to as "issue preclusion."  I will use the terms
interchangeably.

dispute and that Klein is entitled to judgment as a matter of law under 11 U.S.C. §727(a)(2)(A)

based upon the Benedix Mortgage transfer.  I reach this result because:

> (1)   the Debtor is precluded from relitigating the issues previously decided by the
> District Court based upon the doctrine of collateral estoppel; and

> (2)   the District Court's findings establish that the Debtor granted the Benedix
> Mortgage within one (1) year of the filing of his bankruptcy petition with an
> intent to hinder, delay or defraud a creditor.

Consequently, I will enter judgment in Klein's favor and deny the Debtor's chapter 7

discharge.[2]


## II.  PROCEDURAL HISTORY

On December 23, 2010, the Debtor filed a voluntary chapter 11 bankruptcy case.  The

case was converted to a chapter 7 on June 6, 2011.  (See Bky. No. 11-31034, Doc. # 69).

On April 5, 2011, Klein instituted this proceeding by filing a complaint asserting various

claims under 11 U.S.C. §523(a).  (See Adv. No. 11-294, Doc. # 1).  After the Debtor answered

and filed a counterclaim against Klein, the parties stipulated to allow Klein leave to amend her

complaint.

On July 1, 2011, Klein filed a twelve count amended complaint ("the Amended

Complaint").  (Adv. No. 11-294, Doc. # 13).  In addition to her allegations under §523(a), Klein

added claims objecting to the Debtor's general bankruptcy discharge under several subsections of

§727(a).  The Debtor filed an answer to the Amended Complaint on August 10, 2011 and

---

[2]        The denial of the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)(A) renders it
unnecessary to consider Klein's additional claims seeking summary judgment under §§727(a)(2)(B),
(a)(4)(A) and (a)(4)(C).  See, e.g., In re Bailey, 375 B.R. 410, 421 (Bankr. S.D. Ohio 2007).  But see In re
Horton, 152 B.R. 912, 913-14 (Bankr. S.D. Tex. 1993).

asserted two (2) counterclaims against Klein. (See Adv. No. 11-294, Doc. # 19).

After a pretrial conference on January 25, 2012, the court entered an order granting Klein

leave to file a dispositive motion prior to the commencement of discovery.[3]  Klein filed her

Motion for Summary Judgment on March 30, 2012 ("the Motion"). (Adv. No. 11-294, Doc. #

34). The Debtor filed a Response to the Motion on April 27, 2012. (Adv. No. 11-294, Doc. #

41).


### III.  FACTUAL BACKGROUND

### A.  The California State Court Litigation

Klein and the Debtor were divorced in California in 1999.  As part of the divorce decree,

the Superior Court of Orange County, California ordered the Debtor to pay child and spousal

support to Klein.  Klein subsequently returned to the California state court to enforce the support

obligations.  On June 2, 2008, the state court entered the $548,797.07 California Judgment.

Klein transferred the California Judgment to the Court of Common Pleas, Chester County,

Pennsylvania  on August 25, 2008.

---

[3]        Two (2) other creditors and the U.S. Trustee filed adversary proceedings seeking to
either deny the Debtor's discharge or secure a determination that certain debts are non-dischargeable in
the Debtor's bankruptcy case.  (See Adv. Nos. 11-0763, 12-0011 and 12-0013).  After a colloquy with the
parties at the January 2012 pretrial conference, the four (4) proceedings were placed on the same
discovery track and I entered orders granting the various plaintiffs leave to file motions for summary
judgment prior to the commencement of discovery.

## B.  The District Court Litigation

On August 11, 2008, Klein commenced the District Court Action against the Debtor to

avoid and recover certain alleged fraudulent transfers of the Debtor's property under the

Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. §§5101 et. seq., ("PUFTA").

Specifically, Klein sought to avoid the transfer of the Debtor's interest in the real property

located at 1123 St. Matthew's Road, Chester Springs, Pennsylvania ("the Residence"), and the

Debtor's interest in DMW Marine, LLC ("DMW Marine")[4] that the Debtor transferred to himself

and his current wife, Kathleen Weidner,[5] as tenants by the entireties (the transfers referred to

collectively as "the 2 Transfers").


### 1.  the District Court's decisions

As stated earlier, the District Court Action resulted in three (3) separate written decisions.

The first decision granted, in part, Klein's motion for summary judgment.  See Klein v.

Weidner, 2010 WL 27910 (E.D. Pa. Jan. 6, 2010) ("Weidner I").  The District Court found that

the Debtor's January 17, 2006 transfer of his interest in the Residence to himself and his wife as

---

[4]        DMW Marine is a Pennsylvania company that sells and leases marine cranes.  The
Debtor is the president of and owns a 90% interest in DMW Marine.  Until the District Court appointed a
receiver, the Debtor was fully in charge of DMW Marine's operations.

           DMW Marine filed a voluntary chapter 11 petition on May 17, 2011, which was
converted to a chapter 7 shortly thereafter.   (See Bky. No. 11-13953).


[5]        The Debtor and Kathleen Weidner were married on January 6, 2006.

tenants by the entireties was fraudulent under 12 Pa. C.S. §5104(a)(1).[6]  The District Court

reasoned that six (6) of the eleven (11) factors set forth in PUFTA, see 12 Pa. C.S. §5104(b)(1),

supported the finding of actual intent to hinder, delay or defraud Klein.[7] The District Court

alternatively held that the transfer of the Residence satisfied the constructive fraud provision of

PUFTA, see 12 Pa. C.S. §5104(a)(2), and the PUFTA provision applying to present creditors, see

12 Pa. C.S. §5105.

The second decision, issued after a trial held on January 11-13, 2010, resolved the dispute

regarding the Debtor's January 2006 transfer of his interest in DMW Marine to himself and his

---

[6]    12 Pa.C.S. §5104(a)(1) provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor."

[7]    The District Court found that:

1.  the transfer was made to an insider;

2.  the Debtor retained possession or control of the Residence after the transfer;

3.  before the transfer the Debtor had been sued or threatened with suit;

4.  the Debtor removed assets by removing the Residence from the reach of creditors by transferring the Residence to himself and his current wife as tenants by the entirety;

5.  the Debtor did not receive reasonably equivalent value for the transfer of the Residence; and

6.  the Debtor had no assets titled solely in his name and thus, the transfer was made while the Debtor was insolvent or became insolvent shortly after the transfer was made.

Weidner I, 2010 WL 27910, at *2-3.

current wife as tenants by the entireties.  See Klein v. Weidner, 2010 WL 571800 (E.D. Pa. Feb.

17, 2010) ("Weidner II").  In Weidner II, the District Court held that the DMW Marine transfer

was actually and constructively fraudulent under PUFTA.  See 12 Pa. C.S. §§5104(a)(1), (a)(2)

and 5105.  The District Court also found in Klein's favor on her request to "reverse-pierce" the

veil of DMW Marine, a limited liability company.  This remedy permitted Klein to treat DMW

Marine's assets as the Debtor's personal assets for purposes of collecting her judgment against

the Debtor.

       In its third decision, the District Court evaluated whether Klein was entitled to an award

of punitive damages.  See Klein v. Weidner, 2010 WL 2671450 (E.D. Pa. July 2, 2010)

("Weidner III").[8]  In Weidner III, the District Court made it abundantly clear that the Debtor had

engaged in an almost decade-long, acrimonious battle with Klein and, throughout that time

period, resorted to deceit and trickery to avoid paying the California Judgment.[9]  To remedy the

---

[8]     The District Court explained that punitive damages are awarded to punish a tortfeasor
and deter him and others from similar conduct.  Weidner III, 2010 WL 2671450, at *6.  The court stated
that in determining whether to award such damages, courts consider: (1) the character of the act; (2) the
nature and extent of the harm; and (3) the wealth of the defendant, with "[t]he degree of reprehensibility
[being] the primary indicator of the reasonableness of the punitive damage award."  Id. (citations
omitted).

     The District Court also engaged in an analysis of the constitutional due process
limitations of the size of punitive damages awards.  Id. at *8 ("To determine the constitutionality of a
punitive damages award, courts consider: (1) the degree of reprehensibility of the defendant's
misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the
punitive damages award; and (3) the difference between the punitive damages awarded by the jury and
the civil penalties authorized or imposed in comparable cases.") (internal quotations and citation
omitted).

[9]     In this regard, the District Court made a number of specific, similar findings of fact in
both Weidner II and Weidner III.  Below is an excerpt from the findings in Weidner III:

                                    (continued...)

Debtor's outrageous behavior, the District Court awarded Klein punitive damages of

$548,797.07, matching the amount of the California Judgment.

---

[9](...continued)

15. The Court draws an adverse inference against Weidner based upon his assertion of his Fifth Amendment privilege and concludes Weidner participated in the forgery of his wife's signature on the [Benedix] Mortgage.

38. Weidner told Jeffrey Lewis, the general contractor who renovated the [Debtor's] home, that Weidner had to be careful with his money so Klein could not attach any liens against his assets.

39. Weidner repeatedly told his niece, Sherry Tuski, that he had to title assets in his wife's name so Klein would be unable to reach them.

* * *

43. Weidner sent several e-mails to his children, copied to Klein, in which he denigrated Klein for her attempts to collect her debt, and he also threatened to withdraw his financial support for them as a result of Klein's attempts to collect payment.

44. Weidner admitted at trial that the purpose of such e-mails-in particular, an e-mail sent to his son Peter in which Weidner promised to hire a firm to follow, harass, and intimidate Klein-was to dissuade Klein from pursuing the instant action

45. In addition to threatening legal action, Weidner also implicitly threatened the safety and security of one of Klein's attorneys.  Together with a faxed transmission of documents related to the instant matter, Weidner faxed a copy of an e-mail from himself to Kathleen Weidner, with the subject line "reference file for private detective." . . . The body of the e-mail contained the name of one of Klein's attorneys and his home address, estimated age, and spouse's name.

46. Weidner has thoroughly demonstrated by his words and conduct his intent to prevent Klein from collecting her debt from him.

Weidner III, 2010 WL 2671450, at *2-4 (footnotes omitted).

## 2. the District Court's findings regarding the Benedix Mortgage

The Benedix Mortgage transaction is related to, but also distinct from, the 2 Transfers that were found to be fraudulent transfers in the District Court Action.  While the Benedix Mortgage transaction involved an asset (the Residence) that was a target of the litigation, the Debtor finalized the Benedix Mortgage transaction during the pendency of the District Court Action, long after he transferred his sole ownership of the Residence to himself and his wife as tenants by the entireties and also <u>after</u> the commencement of the District Court Action.[10]  Thus, the District Court did not set aside the transfer effected by the Debtor's grant of the Benedix Mortgage.  Yet, for good reasons, the District Court made specific findings regarding the Debtor's grant of the Benedix Mortgage in both <u>Weidner II</u> and <u>Weidner III</u>.

In <u>Weidner II</u>, the District Court drew an adverse inference against Weidner based upon his assertion of his Fifth Amendment privilege and concluded that Weidner participated in the forgery of his wife's signature on the Benedix Mortgage.  <u>Weidner II</u>, 2010 WL 571800, at *2. More pertinent to this adversary proceeding, the District Court also found that

> **[f]rom November 2001,** when Weidner told Klein he would never pay her another cent, and **up through the eve of trial, when he took out another mortgage against the Property,** an asset which was the subject of one of the fraudulent transfer claims in this case, **[the Debtor's] words and actions have thoroughly evidenced his intent to frustrate Klein's efforts to collect her debt.**  He specifically told others, including Lewis, Tuski, and even, through counsel, Klein, that he manages his assets in such a way as to prevent them from becoming available to satisfy Klein's judgment.

<u>Id.</u> at *6 (emphasis added).

---

[10]    The Debtor granted the Benedix Mortgage on January 4, 2010, a mere seven (7) days before the commencement of the trial in the District Court.  <u>See</u> <u>Weidner II</u>, 2010 WL 571800, at *2; <u>Weidner III</u>, 2010 WL 2671450, at *2.

Later, in Weidner III, the District Court was more explicit, particularly with regard to the

Debtor's state of mind in granting the Benedix Mortgage.  The District Court found that

"Weidner intended . . .  his dilatory and harassing actions . . . [including] forging his wife's name

on a loan encumbering the Property, to prevent Klein from collecting the debt and to impede the

enforcement of a court order."  Weidner III, 2010 WL 2671450, at *9.  In evaluating the

"reprehensibility" of the Debtor's conduct for purposes of awarding punitive damages, the

District Court specifically referenced the grant of the Benedix Mortgage by stating:

> The record in this case is replete with evidence of [the Debtor's] intent to evade
> his support obligations, and, after they were reduced to a judgment, avoid paying
> such judgment.  Weidner has expressly and repeatedly stated his intention to avoid
> paying his debt to Klein. He has attempted to insulate his assets to avoid
> repayment by fraudulently conveying interests in real property and his business, in
> violation of PUFTA. He structured his finances to avoid paying Klein. He
> repeatedly harassed Klein, both in and out of court, to discourage her from
> pursuing repayment of his debt to her. **Just days before trial of the instant
> matter was set to commence, he forged his wife's signature on a loan
> intended to encumber, and therefore reduce the value of, an asset** which was
> the subject of one of Klein's fraudulent transfer claims.  Weidner has even
> threatened Klein's counsel in an attempt to induce Klein's lawyers to abandon this
> case.

Id. at *6 (emphasis added).

In further evaluating "reprehensibility," the District Court also examined whether

Weidner acted with "intentional malice, trickery, or deceit" or whether his behavior was "mere

accident."  Id. at *9.  The District Court found that it was "uniquely positioned to assess

Weidner's intent" after it heard Weidner testify and perceived his demeanor on the witness stand.

Id.  The District Court concluded that the Debtor:

> maliciously intended to fraudulently conceal all of his assets to unlawfully avoid
> paying his debt to Klein. **Weidner intended the remainder of his dilatory and
> harassing actions, from filing a spurious lawsuit to forging his wife's name**

-10-

**on a loan encumbering the Property, to prevent Klein from collecting the
debt and to impede the enforcement of a court order**.

Id. (emphasis added).

## IV.  DISCUSSION

### A.  11 U.S.C. §727(a)(2)(A)

Klein moved for summary judgment on Counts 1 through 4 of her Amended Complaint,

which asserted claims under 11 U.S.C. §§727(a)(2)(A), (a)(2)(B), (a)(4)(A), and (a)(4)(C).

11 U.S.C. §727(a) provides, in pertinent part:

> (a)      The court shall grant the debtor a discharge, unless –
>
>                         *   *   *
>
> (2)  the debtor, with intent to hinder, delay, or defraud a creditor or
> an officer of the estate charged with custody of property under
> this title, has transferred, removed, destroyed, mutilated, or
> concealed, or has permitted to be transferred, removed,
> destroyed, mutilated, or concealed –
>
>       (A)  property of the debtor, within one year before the date
>       of the filing of the petition; or
>
>       (B)  property of the estate, after the date of the filing of the
>       petition;
>
>                         *   *   *
>
> (4)  the debtor knowingly and fraudulently, in or in connection
> with the case—
>
>       (A)  made a false oath or account;
>
>                         *   *   *

-11-

> (C) gave, offered, received, or attempted to obtain money,
> property, or advantage, or a promise of money,
> property, or advantage, for acting or forbearing to act
> . . . .

To prove a claim for denial of discharge under §727(a)(2)(A), a plaintiff must prove that

the Debtor:

> (1) transferred or concealed property;

> (2) belonging to the debtor;

> (3) within one (1) year of the bankruptcy filing or after the petition was filed; and

> (4) with an actual intent to hinder, delay, or defraud a creditor.

E.g., Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993); In re DiLoreto, 266 F. App'x 140,

144 (3d Cir. 2008) (nonprecedential); In re Coley, 433 B.R. 476, 487 (Bankr. E.D. Pa. 2010); In

re Rose, 397 B.R. 740, 742 (Bankr. M.D. Pa. 2008); In re Spitko, 357 B.R. 272, 301 (Bankr. E.D.

Pa. 2006).

The language of §727(a)(2)(A) is disjunctive; therefore, a plaintiff is not required to

prove fraud, but can prevail by proving an intent to hinder or delay.[11]   In re Rabinowitz, 2012 WL

1072212, at *7 (Bankr. D.N.J. Mar. 28, 2012); In re Somerville, 73 B.R. 826, 834 (Bankr. E.D.

Pa. 1987) (citing In re Morris, 51 B.R. 462, 464 (Bankr. E.D.Tenn. 1985)); see also In re Bowyer,

---

[11]      I note that although the transfer giving rise to a denial of discharge must have occurred
within one (1) year of the filing of the bankruptcy case (subject to the doctrine of "continuing
concealment," see 6 Collier on Bankruptcy ¶727.02[2][b] (Alan N. Resnick, Henry J. Sommer eds., 16th
ed. 2010)), when a court is evaluating whether a debtor had the requisite intent under §727(a)(2)(A), it
is not constrained to consider events that occurred only within the one (1) year pre-petition time period. See
Spitko, 357 B.R. at 301 (citing Future Time, Inc. v. Yates, 26 B.R. 1006, 1008 (M.D. Ga. 1983)) ("a
party opposing the discharge of a debt can use any evidence, even that occurring outside a time limit, to
prove the nature of an intent which occurred within a time limit, i.e., a present actual intent").  Events
occurring outside the one (1) time frame may shed light on the debtor's later intent.

916 F.2d 1056, 1059 (1990), <u>aff'd on reh'g</u>, 932 F.2d 1100 (5th Cir. 1991) ("[T]he term 'defraud'

does not subsume 'hinder or delay.'"). If the debtor had the intent to hinder or delay a creditor,

"he had the intent penalized by the statute notwithstanding any other motivation he [also] may

have had for the transfer." <u>In re Adeeb</u>, 787 F.2d 1339, 1343 (9th Cir. 1986); <u>see also</u> <u>In re</u>

<u>Johnson</u>, 2008 WL 5157909, at *8 (Bankr. D.N.M. Sept. 24, 2008); <u>In re Greene</u>, 202 B.R. 68,

73 (Bankr. D. Md. 1996).


### B.  Summary Judgment Standards

### 1.

 Summary judgment should be granted when the moving party demonstrates "there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).[12]

 Under Rule 56, the moving party is entitled to judgment as a matter of law if the court

finds that the motion alleges facts which, if proven at trial, would require a directed verdict in

favor of the movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). "[I]t is

inappropriate to grant summary judgment in favor of a moving party who bears the burden of

proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to

rule in its favor on the law." <u>United States v. Donovan</u>, 661 F.3d 174, 185 (3d Cir. 2011)

(quoting <u>El v. Se. Pa. Transp. Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007)). If the moving party

meets its initial burden, the responding party may not rest on the pleadings, but must designate

---

[12] Rule 56 is made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P.
7056.

specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).

The court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson, 477 U.S. at 249. A genuine issue of material fact is one in which the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. Id. at 248. The court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); United States v. 717 South Woodward St., 2 F.3d 529, 533 (3d Cir. 1993). Thus, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court shall enter judgment accordingly in that party's favor. Anderson, 477 U.S. at 252.

A party's burden of proof plays an essential role in determining the merits of a summary judgment motion. Where, as here, the movant is the plaintiff and has the burden of proof at trial, the movant must show that no reasonable jury could find for the non-moving party. Fitzpatrick, 2 F.3d at 1115. The movant "must produce enough evidence to justify a directed verdict in its favor in order to meet its initial burden." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992); see also In re Newman, 304 BR. 188, 193 (Bankr. E.D. Pa. 2002). Thus, in order to prevail on her Motion, Klein must demonstrate that she has sufficiently established each element of her objection to discharge claim under §727(a) and that the Debtor has not come forward with evidence to create a triable factual dispute as to any element.

**2.**

Because the Debtor's "intent" is an element of Klein's cause of action under 11 U.S.C.

§727(a)(2)(A), some further discussion of the propriety of summary judgment is warranted.

A debtor's motivation or intent generally is considered to be a question of fact, not

ordinarily subject to resolution on a motion for summary judgment. See In re Crater, 286 B.R.

756, 760-61 (Bankr. D. Ariz. 2002); In re Okan's Foods, 217 B.R. 739, 755 (Bankr. E.D. Pa.

1998); see also Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007) ("Issues such as intent and

credibility are rarely suitable for summary judgment"); Coley, 433 B.R. at 493 ("proof of

fraudulent intent is not especially susceptible to disposition by summary judgment").

Notwithstanding the general principle stated above, in some cases, the issue of intent may

be determined at the summary judgment stage.  A court may infer an intent to hinder or delay

creditors "where the debtor has committed some act of deception . . . that would justify a

finding that the debtor improperly intended to forestall creditors from realizing on their claims."[13]

In this regard, "[w]hen the evidence is so one sided that reasonable minds could not differ as to

the only rational outcome . . . the factual issue of intent can be decided by the court as a matter

of law." Okan's Foods, 217 B.R. at 755 (emphasis added); accord In re Dygert, 2000 WL

630833, at *9 (Bankr. D. Minn. May 11, 2000).  Indeed, Weidner I, a case involving actual intent

to hinder, delay or defraud a creditor, was decided on summary judgment.

---

[13]     In re Williams, 2011 WL 883922, at *5 (Bankr. N.D. Ill. Mar. 11, 2011) (quoting In re
Bronk, 444 B.R. 902, 915 n.15 (Bankr. W.D. Wis. 2011)) (internal quotations omitted); accord In re
Smiley, 864 F.2d 562, 568 (7th Cir. Ill. 1989) (by misrepresenting value of his assets and fact that they
were encumbered, court inferred that debtor had intent to hinder and/or delay his creditors, even though
he had no intent to defraud them).

In this adversary proceeding, Klein asserts that the intent issue was decided by the District

Court and that collateral estoppel applies to that finding.  If Klein is correct, the issue is not

subject to relitigation and therefore, it cannot be a disputed issue of material fact.

### C. The Parties' Contentions

There is no dispute the first and second elements of Klein's §727(a)(2)(A) claim are

satisfied: the Debtor owned the Residence and transferred an interest in the property by granting

the Benedix Mortgage.  See 11 U.S.C. §101(54) (transfer includes creation of lien); In re Rose,

425 B.R. 145, 151 (Bankr. M.D. Pa. 2010).  It is also undisputed that the third element is

satisfied: the Mortgage was granted to Benedix on January 4, 2010, and recorded on January 12,

2010, within the one (1) year time frame of §727(a)(2)(A).  See Weidner II, 2010 WL 571800, at

*2.

The only issue is whether the Debtor had the intent to hinder, delay or defraud a creditor

when he granted the Benedix Mortgage.

Klein relies on the doctrine of collateral estoppel to support her request for summary

judgment on the §727(a)(2)(A) claim.  By way of issue preclusion, Klein argues that the District

Court's findings mandate the conclusion that the Debtor had the requisite scienter under

§727(a)(2)(A) when he granted the Benedix Mortgage and therefore, she has proven all of the

elements necessary for the denial of discharge.

The Debtor contends that his intent is a disputed issue of material fact.[14]  He opposes the

---

[14]      The Debtor submitted an affidavit in opposition to the Motion in which he asserts that
the Benedix Mortgage "collateralized a loan to DMW," the proceeds of which "were used to keep DMW

(continued...)

-16-

application of collateral estopped on the grounds that: (1) PUFTA and 11 U.S.C. §727(a)(2)(A) are not identical and (2) more expansively, that the District Court's findings regarding his intent were not necessary to its determination that a fraudulent transfer occurred with respect to the Property and DMW Marine.

### D.  Collateral Estoppel  - Legal Principles

The general rule of issue preclusion is: "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006) (quoting Restatement (Second) of Judgments § 27 (1982)).

The prior judgment at issue in this adversary proceeding is a judgment of the federal district court that arose in an action based upon federal diversity jurisdiction.  Federal common law determines the preclusive effect of a federal judgment.  Taylor v. Sturgell, 553 U.S. 880, 891 (2008) (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-08 (2001)).  In federal diversity cases, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."  Taylor, 553 U.S. at 891 n. 4 (citation omitted).

Under Pennsylvania law, in order for collateral estoppel to apply, five (5) elements must be met:

---

[14](...continued)
afloat."  (Debtor's Affidavit ¶¶ 8, 9).  In other words, through the affidavit, the Debtor contends that the grant of the Benedix Mortgage had a purpose other than hindering and delaying Klein's collection of the California Judgment.

(1)  an issue is identical to one that was presented in a prior case;

(2)  there has been a final judgment on the merits of the issue in the prior case;

(3)  the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;

(4)  the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5)  the determination in the prior proceeding was essential to the judgment.

E.g., Spyridakis v. Riesling Group, Inc., 398 F. App'x 793, 797 (3d Cir. 2010) (nonprecedential);

In re Jacobs, 381 B.R. 147, 161 (Bankr. E.D. Pa. 2008) (citing Cohen v. Workers' Comp. Appeal

Bd. (City of Philadelphia), 589 Pa. 498, 909 A.2d 1261, 1264 (Pa. 2006)).  But see Greenway

Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139 (3d Cir. Pa. 2007) (applying four-part test for collateral

estoppel, exclusive of "essential to the judgment" element); Tucker v. Phila. Daily News, 848

A.2d 113 (Pa. 2004) (same).


### E.  Collateral Estoppel – the Requirement that the Issues Be Identical

The Debtor argues that collateral estoppel is inapplicable because §727(a)(2)(A) is not

identical to §5104 of PUFTA.  This argument is without merit in the circumstances presented

here.  For collateral estoppel to apply, the causes of action in the two (2) proceedings need not be

identical.  It is "the issue" that must be identical.

The issue in this adversary proceeding is whether the Debtor's grant of the Benedix

Mortgage was motivated by an intent to hinder, delay or defraud a creditor.  In evaluating the

Debtor's state of mind, the District Court found in both Weidner II and Weidner III that the

Debtor acted with such intent.

No extended discussion of this question is necessary.  On its face, the issue decided by

the District Court in <u>Weidner III</u> in considering the degree of "reprehensibility" of the Debtor's

conduct" is identical to the issue presented here: what was the Debtor's intent when he entered

into the Benedix Mortgage transaction?[15]  The Debtor has not any articulated any plausible

argument that distinguishes the District Court's factual findings in <u>Weidner II</u> and <u>Weidner III</u>

(<u>i.e.</u>, that the Debtor acted with an intent to hinder or delay Klein), from the factual determination

under §727(a)(2)(A) necessary in this proceeding.  Nor has the Debtor suggested that the District

Court employed any legal standards in making its finding that would render it inappropriate to

preclude relitigation of the issue.[16]

---

[15]     Were the identity of the issues not so clear, it would  have been necessary to analyze
further the factors that courts have considered in evaluating whether the issue litigated in the prior
proceeding is identical to the issue in the later case.  For a further discussion of those factors, <u>see</u>
<u>Novinger Group, Inc. v. Hartford Life & Annuity Ins. Co.</u>, 2008 WL 5378288, at *9 (M.D. Pa Dec. 23,
2008) (citing <u>Restatement 2d of Judgments</u>, § 27 CMT. c)).


[16]     Sometimes, factual findings merely involve a determination of "historical facts," <u>i.e.</u>,
findings regarding "a thing done, an action performed, or an event or occurrence."  William W.
Schwarzer, Alan Hirsch, David J. Barrans, <u>The Analysis and Decision of Summary Judgment Motions</u> 14
(Federal Judicial Center 1991) ("Schwarzer").  There is another species of factual findings that are based,
not only on the evidence presented regarding historical events, but also that "are derived by reasoning or
inference from evidence  . . .  incorporat[ing] legal principles or policies that give them independent legal
significance."  <u>Id.</u> at 16.  This second type of finding sometimes is referred to as a "mixed fact/law"
determination.

         If the facts found in the first case are "historical facts," then the differences between the
elements of the legal claims in the two (2) proceedings are immaterial in the collateral estoppel analysis.
<u>See</u> Jacobs, 381 B.R. at 143-44.  On the other hand, if the findings in the first case were mixed fact/law
in nature, the second court must evaluate the applicable legal principles employed in the initial
factfinding and determine whether they are congruent with the legal principles related to the facts
asserted to be precluded from relitigation in the second proceeding.

(continued...)

### F. Collateral Estoppel – the Requirement that the Issues Be Necessary to the Prior Decision

### 1.

As stated earlier, the District Court made its findings regarding the Debtor's scienter in the Benedix Mortgage transfer primarily in connection with its discussion and decision whether to award punitive damages. The Debtor's improper intent in the Benedix Mortgage transaction was only one of a number of facts considered by the court in determining that the imposition of punitive damages was warranted. Thus, before applying collateral estoppel, it is fair to consider whether the District Court's findings regarding the Debtor's intent  was "essential" to its decision in Weidner III.

Also, as the Debtor points out in his response to the Motion, the District Court based its decision in both Weidner I and Weidner II on alternative legal grounds. Not only did the District Court set aside the transfers as having been made with an "actual intent" to hinder, delay or defraud a creditor pursuant to 12 Pa. C.S. §5104(a)(1), the court also invoked PUFTA's "constructive fraud" provisions as a basis for its decisions.[17] The Debtor's implicit argument is

---

[16](...continued)
Here, the Debtor has not argued that the District Court's findings regarding his intent in granting the Benedix Mortgage was a mixed fact/law question. Even if the District Court's finding could be so characterized, the Debtor has not identified any legal standards employed by the District Court in finding that the Debtor intended to hinder or delay Klein when he entered into the Benedix Mortgage transaction or articulated any differences between those standards and those applicable in this adversary proceeding. In short, the Debtor has presented no convincing argument that the issue decided by the District Court was not identical to the issue before this court for purposes of issue preclusion.

[17]      12 Pa. C.S. §§5104(a)(2), 5105 authorize a court to set aside transfers in the absence of any intent to hinder, delay or defraud creditors if the debtor did not receive reasonably equivalent value and: (a) the debtor believed or reasonably should have believed that he or she would incur debts beyond

(continued...)

that District Court's decision can stand solely on its constructive fraud holding, which requires

no finding regarding his intent, and its findings with respect to the Debtor's intent in the Bendix

Mortgage transaction were not necessary to its decision.

The two (2) issues described above are different. To resolve the first issue, it is necessary

to engage in a case-specific evaluation of the role that the issue said to be precluded actually

played in the prior court's decision. The second issue involves a general policy determination

that is a question of law. Therefore, I will consider the two (2) issues separately.


**2.**

The concept of "essentiality" is somewhat elusive in the context of evaluating the

applicability of collateral estoppel to a prior court's factfinding. Comment j to the <u>Restatement</u>

<u>(First) of Judgments</u> §68 (1942) ("Restatement (First)") suggested that a party should not be

precluded from relitigating intermediate or evidentiary facts relied upon by a court in making an

"ultimate" finding of fact.[18] If the Restatement (First) is followed here, the Debtor probably

---

[17](...continued)
the debtor's ability to pay as they became due; or (b) the transfer was made while the debtor was
insolvent (the transfer rendered the debtor insolvent).


[18]     Comment j to the Restatement (First) sets out the following example illustrating the
application of the principle:

> A brings an action against B for breach of contract. B denies that he made the
> alleged contract. At the trial A testifies that on a certain day B signed the
> contract in New York. C testifies that he saw B in London on that day. Verdict
> and judgment for B. Thereafter A brings an action against B alleging that B
> assaulted A on the same day in New York. The judgment in the prior action does
> not preclude A from proving that B was in New York on the day in question.

would not be precluded from relitigating the facts found by the District Court. This is so because

the "ultimate" fact found by the court was that the totality of the Debtor's conduct was

sufficiently reprehensible as to warrant an award of punitive damages. The District Court's

finding that the Debtor engaged in a number of "bad acts," including entering into the Benedix

Mortgage transaction in order to hinder or delay Klein, arguably was a "mere" intermediate fact,

not subject to preclusion.

The Restatement (Second) of Judgments §27 (1982) ("Restatement (Second)") rejects the

approach of the Restatement (First) and advocates a different legal standard for evaluating

"essentiality:"

> The approach taken in the present Comment, however, is different. Instead of emphasizing the distinction between ultimate facts on the one hand and evidentiary facts or mediate data on the other, the present text states that the <u>question should be whether the issue was actually recognized by the parties as important and by the adjudicator as necessary to the first judgment.</u>

Restatement (Second) §27 cmt. j (Reporters Notes) (emphasis added).[19]

The bankruptcy court must apply collateral estoppel in the same manner as the

Pennsylvania state courts. To do so, the court must predict how the Pennsylvania Supreme Court

would resolve the issue. If the Pennsylvania Supreme Court has not provided guidance, the court

must examine the decisional law of the Pennsylvania intermediate courts and decisions of federal

courts and other jurisdictions that discuss the issue. See, e.g., Buczek v. Continental Cas. Ins.

Co., 378 F.3d 284, 288 n.2 (3d Cir. 2004); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 486

---

[19]    The notion, expressed by the Restatement (Second) that the issue must have been recognized by the parties as important, illustrates the close nexus between the fourth element in the collateral estoppel analysis (which is sometimes referred to as the requirement that the issue was "actually litigated") and the essentiality requirement.

(3d Cir. 1997); Wiley v. State Farm Fire & Cas. Co., 995 F.2d 457, 459-60 (3d Cir. 1993); In re

Jack Greenberg, Inc., 240 B.R. 486, 501 (Bankr. E.D. Pa. 1999).

This passage from the Restatement (Second) set out above was quoted with approval in

Zarnecki v. Shepegi, 532 A.2d 873, 879 (Pa. Super. Ct. 1987).  My research reveals no line of

contrary cases.  In these circumstances, I conclude that the more modern approach set out in the

Restatement (Second) accurately states Pennsylvania law on the subject.  See also Christine

Davis, 10 Standard Pennsylvania Practice 2d § 65:114 (2012).  Thus, before a party is precluded

from relitigating an issue, Pennsylvania law requires that the court be satisfied that the parties

recognized the issue as important in the first proceeding and the court's finding was an integral

part of its decision making process and not mere dictum.  See generally Matson v. Housing

Authority of City of Pittsburgh, 473 A.2d 632, 636 (Pa. Super. Ct. 1984) (collateral estoppel not

applicable to "dictum").

My review of the District Court's decision convinces me that the circumstances

surrounding the Debtor's grant of the Benedix Mortgage (including the forgery of his wife's

signature on the loan documents and his intent in entering into the transaction) were significant

issues in the District Court litigation.  Further, although the District Court's finding regarding the

Debtor's intent was only one (1) of a number of facts that the court took into account in its

punitive damages decision in Weidner III, I conclude that its consideration of the Debtor's intent

in the Benedix Mortgage transaction was sufficiently "woven into the fabric of the court's

analysis," Jacobs, 381 B.R. at 162, that it did not have the characteristic of mere dictum.  See

generally McLaughlin v. Bradlee, 803 F.2d 1197, 1204 (D.C. Cir. 1986) (explaining necessity

requirement means that "disposition in the first suit was the basis for the holding with respect to

the issue and not 'mere dictum.'" (citation omitted)); Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1571 (Fed. Cir. 1983) (necessary requirement "does not mean that the finding must be so crucial that, without it, the judgment could not stand . . . [r]ather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation").[20]  Accordingly, I conclude that the court's determination that the Debtor's grant of the Benedix Mortgage was intended to hinder or delay Klein's collection of her judgment was essential to its punitive damages decision, as required by the collateral estoppel doctrine.

### 3.

Finally, I consider whether the District Court's use of alternative legal grounds for determining the 2 Transfers to be fraudulent transfers strips its findings regarding the Debtor's actual intent of preclusive effect.

In Jean Alexander Cosmetics, the Third Circuit Court of Appeals, after acknowledging a

---

[20]     One respected commentator has made the following incisive observations regarding the determination whether previously decided issues was necessary to the court's decision:

> [T]he inquiry into necessity is likely to be a largely objective process, in which a later court simply asks what was reasonably necessary to support the prior judgment. The possibility that a particular finding may have played a central role in the subjective process of deciding the first action is apt to be put aside, primarily because it is very difficult to reconstruct the process of decision with any certainty. The result may be to deny preclusive effect as to findings that in fact were considered very carefully. Denial of preclusion may nonetheless be justified not only by the difficulty of reconstructing the actual process of decision but also by the possibility that comparable difficulties would have forestalled effective appellate review in the first action.

Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure §4421 (West 2012).

split among the federal courts of appeal, held that "independently sufficient alternative findings

should be given preclusive effect." 458 F.3d at 255. The Court reasoned:

> Litigants often raise multiple issues that are potentially dispositive of a case, and
> courts routinely address them in the interest of providing a complete and
> thoroughly reasoned decision. To permit or require relitigation of all alternative
> findings would eviscerate a great number of judicial determinations that were the
> products of costly litigation and careful deliberation. Indeed, under the approach
> of the Second Restatement, the judicial findings in nearly any complex case would
> be unlikely to preclude subsequent relitigation of the same issues.

Id. at 254-55.

Jean Alexander Cosmetics involved a prior adjudication of a federal administrative

agency, not a state court. Therefore, it did not involve the application of Pennsylvania law.

My research reveals no Pennsylvania Supreme Court decision squarely on point, again

requiring that I predict how that court would decide the issue. On the strength of the court's

reasoning in Jean Alexander Cosmetics and the available precedent applying Pennsylvania law

on this issue,[21] I predict that the Pennsylvania Supreme Court would reach the same result on this

issue as the Third Circuit Court of Appeals. Therefore, I hold that a prior court's alternative

holding is "essential" to its decision and entitled to collateral estoppel effect in a later

proceeding.[22] As a consequence, the District Court's "constructive fraud," alternative holding

---

[21]    See County of Centre, Bd. of Assessment Appeals v. Pennsylvania State University, 565
A.2d 187, 195-96 (Pa. Commwlth. Ct. 1989), rev'd on other grounds, 615 A.2d 303 (Pa. 1992); Mellon
Bank v. Rafsky, 535 A.2d 1090, 1094 (Pa. Super. Ct. 1987); see also Commonwealth v. Reed, 971 A.2d
1216, 1220 (Pa. 2009) (in applying the law of the case doctrine, stating "[w]here a decision rests on two
or more grounds equally valid, none may be relegated to the inferior status of obiter dictum" (quoting
Commonwealth v. Swing, 186 A.2d 24, 26 (Pa. 1962))); In re Campbell, 448 B.R. 876, 883-84 (Bankr.
W.D. Pa. 2011) (applying Pennsylvania law).

[22]    While the Debtor also makes reference to the fact that the District Court decisions,
particularly the punitive damages award, are on appeal, this does not deprive the decision of being a final

(continued...)

does not vitiate the preclusive effect of its finding that the Debtor entered into the Benedix

Mortgage transaction with an actual intent to hinder or delay Klein's collection of her claim.


## V.  CONCLUSION

The only potential disputed issue material fact in this adversary proceeding is whether the

Debtor had the intent to hinder, delay or defraud a creditor when he granted the Benedix

Mortgage.  For the reasons explained above, I conclude that the issue was decided adversely to

him in the District Court Action and that he is precluded from relitigating the issue by the

doctrine of collateral estoppel.[23]

Consequently, Klein will be granted judgment in her favor under §727(a)(2)(A) and the

Debtor's chapter 7 bankruptcy discharge will be denied.[24]  An order consistent with this Opinion

---

[22](...continued)
order.  E.g., Shaffer v. Smith, 543 Pa. 526, 529 (1996).  Further, there is no dispute that the parties in the
two (2) proceedings are the same and that there was a full and fair opportunity to litigate the issues.


[23]    For this reason, the Affidavit submitted by the Debtor in opposition to the Motion, see
n.14, supra, does not create a disputed issue of material fact.  I note further that even if the transaction
was motivated by the secondary, business motive articulated in the Affidavit, the Debtor has not
presented a legally cognizable defense.  See Adeeb, 787 F.2d at 1343.


[24]    The Debtor asserted two (2) counterclaims against Klein.  (See Adv. No. 11-294, Doc.
#19).  The first counterclaim is to determine the extent, priority, and validity of Klein's judgment lien.  In
the second counterclaim, the Debtor objects to Klein's proof of claim, filed April, 14, 2011.  (See Proof
of Claim No. 6).

I question the propriety of resolving the counterclaims in this adversary proceeding
rather than through the contested matter process in the main bankruptcy case.  As a result, the
counterclaims are susceptible to dismissal without prejudice.  However, in the Motion, Klein did not
request dismissal of the counterclaims and the parties did not discuss them in their memoranda.

(continued...)

will be entered.

Date:  **September 10, 2012**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

[24](...continued)
Therefore, I will schedule a status hearing to discuss with counsel the appropriate procedure for addressing the merits of the counterclaims.